UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROBERT ALLEN COOMBS,

     Petitioner,

v.                                     CASE NO. 6:09-cv-833-Orl-31DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

     Respondents.

_____

**ORDER**

     Petitioner, through counsel, initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 10). Petitioner filed a reply to the response (Doc. No. 13).

     Petitioner alleges seven claims for relief in his petition: counsel rendered ineffective assistance by (1) failing to advise him that discharging his attorney from his first trial and retaining new counsel for his second trial would hinder his defense; (2) failing to present evidence that Petitioner's attorney from his first trial wanted to withdraw; (3) opening the door, and failing to object to, the prosecution's inquiry as to Petitioner's prior convictions; (4) failing to adequately challenge the qualifications of a witness; (5) failing to investigate and present testimony to discredit the State's witnesses; (6) failing to investigate and

present evidence that no semen was found from the sexual assault test performed on the victim; and (7) based on the cumulative effect of counsels' performance.  For the following reasons, the petition is denied.

## I.    *Procedural History*

Petitioner was charged by information with kidnaping with intent to commit a felony and sexual battery.  A jury trial began, but a mistrial was declared after Petitioner violated a pretrial ruling during his testimony.[1]  Prior to the start of his second trial, Petitioner's attorney withdrew and new counsel, whom Petitioner had retained, was substituted.  A jury trial was held, and Petitioner was found guilty of the lesser-included offense of kidnaping and sexual battery.[2]  The state court sentenced Petitioner to a ten-year term of imprisonment for kidnaping and to a thirty-year term of imprisonment for sexual battery with the sentences to run concurrently.  Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief.  The state court denied the motion, and Petitioner appealed.  The Fifth District Court of Appeal of Florida affirmed *per curiam*.

While his Rule 3.850 motion was pending, Petitioner filed a state petition for writ of habeas corpus.  The Fifth District Court of Appeal denied the petition.

---

[1]As a result of Petitioner's actions, he was held in direct criminal contempt.

[2]In the second trial, the state trial court also found Petitioner to be in direct criminal contempt because he again violated a pretrial ruling during his testimony.

2

## II.     *Facts Adduced at Trial*

The victim, Kelly De Los Santos ("victim" or "De Los Santos"), testified that she and Petitioner, who were dating, had used drugs throughout the course of their relationship. (App. F at 152-54.)  According to De Los Santos, on the day leading up to the offenses, she and Petitioner had been doing crack cocaine and working on his house, which had burned and was under construction.  *Id.* at 156-57.  De Los Santos, who had a drug evaluation scheduled the following day, testified that Petitioner left his residence that night to go to his mother's home to get money to pay De Los Santos for the work she had done.  *Id.* at 158-62.  De Los Santos waited at the trailer on the construction sight for Petitioner to return so that he could take her home.  *Id.*  Petitioner failed to return for several hours.  *Id.* at 161. When Petitioner returned home, De Los Santos was upset because of Petitioner's delay and because he had purchased more crack despite her request that he not do so.  *Id.* at 162.

Petitioner and De Los Santos began screaming at each other, and De Los Santos grabbed the crack and threw it out of the trailer.  *Id.* at 163-64.  Petitioner started hitting De Los Santos in the face, threw her to the floor, continued to hit her, and then choked her. *Id.* at 165-66.  De Los Santos testified that she thought she lost consciousness during which time Petitioner duct taped her hands behind her back.  *Id.*  Petitioner continued yelling at De Los Santos and told her he was going to kill her.  *Id.* at 167-68.  Petitioner hit the victim in the face and chest and choked her again causing her to lose consciousness.  *Id.* at 169. Petitioner took De Los Santos' underwear and pants off and sodomized her.  *Id.*  De Los Santos begged Petitioner to stop, and Petitioner placed duct tape on her mouth.  *Id.* at 170,

3

172.  When Petitioner finished raping De Los Santos, he left the tape on her hands and told her to go to sleep.  *Id.* at 172, 175.  De Los Santos said that Petitioner removed the tape from her hands the following morning after the construction workers arrived.  *Id.* at 177.

Later that morning, Petitioner's brother, Thomas Coombs, came into the trailer briefly but Petitioner quickly called him out of the trailer.  *Id.* at 179.  David Kinsey ("Kinsey"), the victim's father, came to the construction sight around noon looking for the victim because she had missed her appointment.  *Id.* at 181.  At that time, De Los Santos left with Kinsey, who took her to the hospital because she asked him to do so.  *Id.* at 183.

According to De Los Santos, there was no telephone in the trailer, Petitioner had taken her glasses, and he had taken her pants.  *Id.* at 160, 173, 180.  De Los Santos admitted that she was not certain of the exact sequence of events because it happened so quickly and because three years had passed.  *Id.* at 168, 170, 221.

Kinsey testified that when he got to Petitioner's construction sight, he spoke with Petitioner who seemed very calm.  *Id.* at 244.  Kinsey asked Petitioner to get De Los Santos, who he believed was napping in the trailer.  *Id.* at 244-52.  When Kinsey saw De Los Santos, one side of her face was beaten up, her lip was busted, one eye was black, and she had blood on her shirt.  *Id.* at 251-52).  De Los Santos showed Kinsey the duct tape that Petitioner had placed on her mouth and which still had her hair on it.  *Id.* at 253.  Kinsey testified that De Los Santos told him that she was raped and had been given an injection of something.  *Id.* at 255.  Kinsey said De Los Santos was very upset and asked to go to the hospital.  *Id.* at 251-55.

4

Patricia Vincente ("Vincente"), the triage nurse at the hospital, testified that she had four years of experience in the emergency room. *Id.* at 281. Despite the defense's objection, the trial court allowed her to testify regarding emergency room procedure and the age of the victim's bruises. *Id.* at 292-93. Vincente testified that De Los Santos was crying and disheveled when she saw her. *Id.* at 295. Vincente further stated that the bruises on the victim appeared to have formed within twenty-four hours of the examination and the bruises on the left side of her face appeared to be in the shape of a hand. *Id.* at 297-298, 305, 314. Vincente testified that the bruising under the victim's chin and on her shoulder looked like fingers and appeared to be a squeezing type of injury. *Id.* at 307-10. Vincente opined that the broken blood vessels in the victim's eyes could have been caused by strangulation. *Id.* at 311-12. Numerous photographs of the victim's injuries were admitted into evidence.

Susan Parker Wright, an officer with the Orange County Sheriff's Office, testified that she retrieved the duct tape from De Los Santos. *Id.* at 330. The tape was admitted into evidence. *Id.* at 334-35.

Alma Clark ("Clark"), Petitioner's mother, testified that Petitioner came to her home for dinner on the day of the incident. *Id.* at 379. She stated that she saw Petitioner the following morning at the construction site. Clark indicated that Petitioner did not tell her at that time that De Los Santos had tried to commit suicide the night before. *Id.* at 385-86. Likewise, Pedro Benavides, a workman at Petitioner's property, testified that he saw the victim and Petitioner on the morning after the incident and nothing appeared unusual although he was several feet away from the victim when he saw her. *Id.* at 387-402.

Petitioner's brother, Thomas Coombs, testified that he  briefly went into the trailer on the morning after the incident and saw De Los Santos on the telephone, which contradicted De Los Santos' testimony that there was no telephone in the trailer.  *Id*. at 408-09.  Thomas also stated that prior to the date of the offenses, he had heard the victim say that she would have Petitioner put in jail like her other boyfriends after the couple had a fight.  *Id*. at 417.

Petitioner testified that on the night of the incident, he and the victim had gotten into a fight because he did not obtain more crack cocaine.  *Id*. at 454.  According to Petitioner, during their argument, they talked about breaking up after which he left the trailer to go to his workshop on the property.  *Id*. at 454-55.  Petitioner said he later found De Los Santos lying in the floor of his home that was under construction with a dog collar around her neck, a cable wire hanging from the ceiling, and a tipped over chair nearby. *Id*. at 458.  Petitioner testified that he thought that De Los Santos had tried to kill herself and that she had told him that she was going to do so because he did not love her.  *Id*. at 459.  Petitioner did not call for help, but instead took De Los Santos back to the trailer where she slept until the morning.  *Id*. at 460.  Petitioner testified that the following morning De Los Santos did not want to see Kinsey when he came to the property and was upset with Petitioner when he told her she had to go with him.  *Id*. at 464-66.  Petitioner further said that De Los Santos threatened him when he told her their relationship was over.  *Id*. at 466.  Petitioner initially denied having sex with De Los Santos, but later admitted that they had consensual anal intercourse on the night of the offenses.  *Id.* at 503,

6

507-08.

In rebuttal, Dorothy Montes, one of the investigating officers, testified that she found no dog collar, hanging cable wire, or chair in Petitioner's home to corroborate Petitioner's testimony about the victim's alleged suicide attempt. *Id.* at 518-19.

### III.   Legal Standards

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3]  *Id.* at 687-88.  A court must

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## IV. *Analysis*

### A. *Claims One, Five, and Six*

In claim one, Petitioner asserts that trial counsel rendered ineffective assistance by failing to advise him that discharging his attorney from his first trial and retaining new counsel for his second trial would hinder his defense. In support of this claim, Petitioner

contends that his attorneys were not prepared for the second trial because the state court denied their motion for continuance.  Petitioner argues that counsel was not able to (1) impeach De Los Santos with her prior trial testimony because they could not obtain the trial transcript in time, (2) investigate and subpoena Dr. Carlos Columbo and Jason Werking, and (3) obtain an expert to testify about the victim's injuries.  Similarly, in claim five, Petitioner contends that counsel rendered ineffective assistance by failing to investigate and call Dr. Columbo as an expert witness to discredit the testimony of Vincente.  In claim six, Petitioner argues that counsel rendered ineffective assistance by failing to investigate and present evidence that no semen was found on the smears taken from the victim.

Petitioner raised these claims in his Rule 3.850 motion.  Applying *Strickland*, the state court denied relief.  (App. K at 2-4.)  The state court determined that Petitioner had not demonstrated prejudice.  *Id.*  The state court reasoned that the evidence of Petitioner's guilt included photographs of the victim's injuries, which corroborated her testimony, along with Petitioner's admission that they had anal intercourse.  *Id.* at 3.  The state court concluded that in light of the evidence, no reasonable probability existed that the outcome of the trial would have been different if counsel had impeached De Los Santos with her prior trial testimony about (1) what she threw at Petitioner on the night of the offenses, (2) the order of the events during the attack, (3) the number of times he hit and choked her, (4) the location of the duct tape, (5) the words Petitioner used when he threatened her, (6) what time Petitioner untied her hands, and (7) whether Petitioner's mother was present the

10

following morning.  *Id.*

Similarly, the state court reasoned that Dr. Columbo, the emergency room examining doctor, had indicated that De Los Santos had abrasions on her face and redness around her anus, which would not have served to significantly impeach Vincente's testimony that the bruises were shaped like a hand.  *Id.* at 4, 9-10.  The state court noted that the jury was allowed to view photographs of the victim's injuries, and a reasonable probability did not exist that the result would have been different had an expert testified about the shape of the injuries or their possible causes.  *Id.*

With respect to Jason Werking, the Florida Department of Law Enforcement analyst who concluded that no semen was found on the rape kit samples, the state court noted that such evidence did not prove or support Petitioner's defense given that he admitted that he had consensual anal sex with the victim.  *Id.* at 4, 10-11.  Thus, although the victim was not certain if Petitioner ejaculated, such evidence would not have served to impeach the victim so as to result in a different outcome.  *Id.*  Finally, the state court determined that counsels' failure to call an expert to testify about the age and possible causes of the victim's injuries and about the absence of semen did not result in prejudice for the same reasons previously discussed.  *Id.*

Upon review of the record, Petitioner has not established that the state court's denial of these claims are contrary to, or an unreasonable application of, *Strickland*.  First, the reason for the majority of the alleged inconsistencies in the victim's testimony were explained by the victim in the second trial.  Specifically, De Los Santos admitted that she

was not certain of the exact sequence of events because it happened so quickly and because three years had passed. (App. F at 168, 170, 221.) Moreover, close review of portions of the transcript from the first trial establishes that much of the victim's testimony was actually not inconsistent with her testimony in the second trial. For instance, Petitioner complains that in the first trial the victim did not testify that she threw anything other than a coffee cup before he began beating her, whereas in the second trial the victim testified that she threw Petitioner's crack outside prior to the incident. However, the victim testified at the first trial that she threw out some of Petitioner's drugs when the fight first began. (Doc. No. 2-1 at 40.) Thus, although the victim did not mention throwing a cup at Petitioner in the second trial, she consistently testified at both trials that she threw Petitioner's drugs outside when the fight started. Furthermore, contrary to Petitioner's contention, at both trials, the victim testified that Petitioner threatened to kill her. *See* App. F at 167. In sum, much of De Los Santos' testimony from the first trial, which Petitioner contends is inconsistent with her testimony from the second trial, is not in fact inconsistent. As such, Petitioner has not demonstrated that he was prejudiced by counsels' failure to impeach the victim with her previous trial testimony.

Further, Petitioner has not demonstrated that either Dr. Columbo or Jason Werking's purported testimony would have impeached Vincente's testimony or supported his defense. Petitioner admitted having anal sex with the victim. Thus, the absence of semen was not relevant to whether there was a sexual assault.

Moreover, Petitioner has not provided the Court with any evidence that Dr.

12

Columbo or an expert witness would have refuted Vincente's testimony regarding the victim's injuries. "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). Hence, the "petitioner must first make a sufficient factual showing, substantiating the proposed witness testimony." *Percival v. Marshall*, No. C-93-20068 RPA, 1996 WL 107279, at *3 (N.D. Cal. March 7, 1996). "Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified." *Id.*

Petitioner has failed to present evidence of actual testimony or any affidavit from Dr. Columbo or any expert. Thus, Petitioner has not made the requisite factual showing. Petitioner's self-serving speculation will not sustain a claim of ineffective assistance of counsel. Moreover, the Court notes that Dr. Columbo's sexual assault report describes the injuries to De Los Santos' right cheek, lip, and chin as contusions, which is consistent with Vincente, De Los Santos, and Kinsey's testimony. *See* Doc. No. 2-1 at 45.

Finally, regardless of whether Dr. Columbo or another expert could have offered testimony that would have impeached Vincente's testimony, the jury was allowed to examine numerous photographs of the victim's injuries. Thus, the jury was able to make findings about the shape of the bruises and how "fresh" they were and the consistency of De Los Santos' injuries in light of De Los Santos' and Petitioner's testimony about how the

13

injuries occurred.  As such, Petitioner has not shown that a reasonable probability exists that the outcome of the trial would have been different absent counsels' failure to advise him about the purported prejudice that would result from substituting his counsel prior to his second trial.  Likewise, Petitioner has not established that he was prejudiced by counsel's failure to investigate and call Dr. Columbo or Werking or any other expert to testify concerning the victim's injuries or the absence of semen. Accordingly, claims one, five, and six are denied pursuant to § 2254(d).

B.     *Claim Two*

Petitioner asserts that counsel from his second trial rendered ineffective assistance by failing to present evidence to the trial court that Petitioner's counsel from his first trial wanted to withdraw and that counsel's withdrawal was not the result of Petitioner's decision.  Petitioner maintains that the trial court would have granted his motion for continuance of the second trial had counsel presented such evidence.

Petitioner raised this claim in his Rule 3.850 motion.  Applying *Strickland*, the state court denied relief.  (App. K at 5-6.)  The state court reasoned that counsel advised the trial court on two occasions that Petitioner's former attorney did not want to represent Petitioner.  *Id.* at 6.  The state court further noted that Petitioner also told the trial court in relation to the motion to continue that it was his attorney who did not want to continue representing Petitioner.  *Id.*  As such, the state court concluded that Petitioner failed to show that additional evidence concerning the circumstances for counsel's withdrawal would have made a difference in the trial court's decision to deny the motion to continue.

14

*Id.*

The state court's determination is supported by the record.  The trial court was advised by both counsel and Petitioner that his former attorney did not want to continue representing Petitioner.  (App. D at 376; App. E at 402, 404.)    Thus, Petitioner has not demonstrated either deficient performance or prejudice based on counsel's failure to offer additional evidence that Petitioner's former attorney did not want to represent Petitioner at the second trial.  Accordingly, claim two is denied pursuant to § 2254(d).

C.      *Claim Three*

Petitioner contends that counsel rendered ineffective assistance by opening the door to the prosecution's improper inquiry about Petitioner's prior convictions and by failing to object to the prosecution's inquiry.  Specifically, Petitioner argues that the prosecutor improperly asked him whether he entered pleas in his prior criminal cases, whether there were plea negotiations in the prior cases, whether the evidence supported the prior cases, when his sentences concluded, and whether De Los Santos was aware of the facts surrounding his prior convictions.  Petitioner asserts that the prosecution subsequently used Petitioner's responses to these questions to argue that De Los Santos was terrified of him.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied relief pursuant to *Strickland*.  (App. K at 6-8.)  In so ruling, the state court determined that defense counsel opened the door for the State to question Petitioner about his motives for entering pleas in his prior cases because defense counsel asked Petitioner why he did not go to trial

in those cases. *Id*. at 7.  The state court reasoned, however, that Petitioner could not demonstrate a reasonable probability existed that the outcome of the trial would have been different if defense counsel had not opened the door to questions concerning his motive for taking the pleas. *Id*.  The state court further determined that Petitioner, not defense counsel, opened the door to additional information about his prior convictions by volunteering information he had not been asked. *Id*.  The state court reasoned that the prosecution was entitled to ask Petitioner if the victim was aware of his prior convictions and Petitioner's response to the question was an attempt to minimize his criminal history. *Id*. at 7-8.  The state court noted that defense counsel objected to the prosecutor's question, but the objection was overruled. *Id*. at 8.  The state court concluded, therefore, that Petitioner could not demonstrate either deficient performance or prejudice. *Id*.

The state court's determination is supported by the record.  During direct examination, defense counsel asked Petitioner how many felony convictions he had to which Petitioner responded three. (App. F at 438.) Counsel next asked Petitioner if he had entered pleas in those cases, and Petitioner affirmed that he had. *Id*.  Counsel asked Petitioner why he did not proceed to trial in those cases, and Petitioner responded that he did not do so because he was guilty. *Id*.  Therefore, Petitioner was able to imply that his reason for proceeding to trial in the instant case was because he was not guilty.

Thereafter, on cross-examination, the prosecutor asked Petitioner about his reasons for entering pleas in his prior cases, namely if he was offered pleas and lesser sentences. *Id*. at 476.  Petitioner responded affirmatively to the prosecutor's questions and again

16

testified that he was guilty in those cases.  *Id*. at 477.  Thus, for a second time Petitioner was able to implicitly deny his guilt in the instant case.  Given that Petitioner was able to provide self-serving testimony as a result of defense counsel's initial questioning and the prosecution's questioning concerning the prior pleas, Petitioner has not shown that he was prejudiced by defense counsel opening the door to further questions.

With respect to the subsequent questions asked by the prosecutor, Petitioner cannot establish either deficient performance or prejudice.  The prosecutor asked Petitioner if he had been honest with the victim about his criminal convictions to which Petitioner responded, "It was 18 years ago, so probably not. . . ."  *Id*.  A side bar was conducted during which the prosecutor argued that Petitioner opened the door to further questions about his convictions based on his response that they had happened 18 years ago.  *Id*. at 478-79.  The state court ruled that Petitioner had opened the door to further questions because his answer was an attempt to minimize his criminal history. *Id*. at 479.  Defense counsel objected, but the objection was overruled.  *Id*.  The prosecutor then asked Petitioner when the sentences concluded on his prior convictions, and Petitioner responded 1997 or 1998.  *Id.* at 479-80.  Defense counsel objected when Petitioner was asked if De Los Santos was aware of his prior convictions and the expiration of the sentences.  *Id*. at 481.  The trial court overruled the objection, and Petitioner responded that De Los Santos was aware of this information.  *Id.*

The Court agrees that Petitioner opened the door to additional questions about his criminal convictions because he told the prosecutor that the convictions occurred 18 years

before he and the victim were together.  Petitioner's answer attempted to minimize the seriousness of his criminal history and made the date his sentences expired relevant. Moreover, defense counsel in fact objected to the prosecutor's questions.  As such, counsel was not deficient, and Petitioner has not shown a reasonable probability exists that the outcome of the trial would have been different absent the inquiry concerning his prior convictions.  Accordingly, claim three is denied pursuant to § 2254(d).

### D.    Claim Four

Petitioner contends that counsel rendered ineffective assistance by failing to adequately challenge Nurse Vincente's qualifications to testify concerning the cause and age of De Los Santos' injuries.  Petitioner maintains that if counsel had made proper objections, a substantial likelihood exists that her testimony would not have been allowed or would have been limited to her observations rather than to the potential causes of the injuries.

Petitioner raised this claim in his Rule 3.850 motion, and the state court denied relief pursuant to *Strickland*.  (App. K at 8-9.)  The state court reasoned that counsel questioned Vincente about her ability to provide general testimony and objected to the admission of her testimony.  *Id*. at 8.  The state court noted that counsel also objected to Vincente "testifying as an expert witness, giving any testimony about the age of the bruises, and giving her opinion regarding the kind of trauma the victim experienced."  *Id*.  The state court reasoned that all of counsel's objections were overruled and no reasonable probability existed that further objections would have resulted in a different ruling.  *Id*. at

18

8-9.

Petitioner has not demonstrated that the state court's determination is contrary to, or an unreasonable application of, *Strickland.* Defense counsel voir dired Vincente regarding her experience and qualifications and objected to her ability to testify about De Los Santos' injuries. (App. F at 286-294.) The state court overruled defense counsel's objections and allowed Vincente to testify about the appearance of De Los Santos' injuries. *Id.* at 294-321. Throughout Vincente's testimony, defense counsel continued to object to her testimony, and the trial court overruled the objections. *Id.* at 295-96, 309-10, 313-14. Thus, counsel did not render deficient performance by failing to object to Vincente's testimony. More importantly, however, numerous photographs of De Los Santos' injuries were admitted, and the jury was allowed to view these photographs. As such, the jury was permitted to consider the appearance of the injuries in light of the testimony and make findings of fact as to the cause of the injuries. Thus, Petitioner has not demonstrated that a reasonable probability exists that the outcome of the trial would have been different had counsel made additional arguments and objections to Vincente's testimony. Accordingly, claim four is denied pursuant to § 2254(d).

### E.    *Claim Seven*

Petitioner asserts that the cumulative effect of counsel's performance deprived him of effective assistance. Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief, reasoning that Petitioner had not demonstrated that counsel was ineffective as to any claim. (App. K at 11.)

19

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fl. Dept. of Corrections*, 342 F. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n. 26 (1984)).

Upon consideration of the record, the Court concludes that Petitioner has failed to demonstrate that counsel rendered ineffective assistance with respect to any of the claims raised. The Court has considered the merits of each of Petitioner's claims of ineffective assistance and found them to be without merit. Therefore, even assuming that the claims may be considered in the aggregate, Petitioner has not established that he received ineffective assistance of counsel. *See Cole v. Crosby*, 2006 WL 1169536, at *57 (M.D. Fla. 2006) (concluding that when the petitioner fails to demonstrate deficient performance or prejudice, he cannot demonstrate that he suffered any harm from the cumulative effect of counsel's performance). Thus, claim seven is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.   *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.   Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right.  Thus, the Court will deny Petitioner a certificate of appealability.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Robert Allen Coombs is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.      Petitioner is **DENIED** a Certificate of Appealability.

   3.     The Clerk of the Court is directed to enter judgment accordingly and close

this case.

   **DONE AND ORDERED** at Orlando, Florida, this 26th day of October, 2010.


Copies to:
sc 10/26
Counsel of Record

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE